T. W. LATHAM and T. J. LEFTWICH, for plaintiff in error.

J. H. LUMPKIN, WILL. HAIGHT, ROSSER & CARTER, N. J. & T. A. HAMMOND and ELLIS & GRAY, *contra*.

---

THE SWIFT SPECIFIC COMPANY *v.* JACOBS *et al.*

There was no abuse of discretion in denying the injunction.
July 13, 1891.　　　　　　　　　　　　*Judgment affirmed.*

Injunction.　　Before Judge MARSHALL J. CLARKE. Fulton superior court.　March term, 1891.

The Swift Specific Company by its equitable petition made, in brief, the following allegations: Petitioner manufactures a blood medicine popularly called S. S. S., put up in packages and bottles bearing a particular label, on which is the name of petitioner as manufacturer and said "S. S. S.", which is both the trade name and a trade-mark. The medicine is of great reputation and wide sale. Its composition is a trade secret. Petitioner has spared no pains in its manufacture to give it the greatest possible virtue and to keep it at a high standard of purity, and for many years has spent in preparing it and in advertising and selling it a very large amount of money. The property in the medicine is of great value, a value especially dependent upon the high reputation which the efforts of petitioner have given the medicine. Sometime during the present year a fire occurred in the

warehouse of Henry J. Lamar & Sons, and in settle-
ment of policies covering the loss by the fire, some in-
surance companies took possession of all the burned
goods in the warehouse covered by the policies, and
among these goods were about four hundred and fifty-
one cases of S. S. S., each containing one dozen bottles
bearing the label, trade-mark and trade name aforesaid,
with the name of petitioner as the manufacturer. The
medicine was exposed in the fire to such a degree of heat
that its medicinal qualities, which are mainly vegetable,
were dissipated, and thereby all of its virtue was lost;
and defendants, petitioner believing that they were aware
of the effect of the fire upon the medicine, purchased it
from the insurance companies and are now attempting
to sell it as genuine, unadulterated and good medicine;
and they offer it for sale under the trade-mark, label and
name of petitioner. By reason of the facts above men-
tioned, all of the medicine so purchased by defendants,
or much the larger part of it, is not really the medicine
manufactured by petitioner, but it has lost all its virtue,
and for defendants to sell it as the medicine of peti-
tioner is to palm off upon the public a spurious sub-
stance under the name of petitioner's medicine, to the
irreparable damage and injury of petitioner. The sale
of said burned medicine by defendants will be an in-
fringement of the exclusive right of petitioner to the
use of its packages, label, trade name, trade-mark and
its own name, to designate its manufacture as its real,
and not a spurious medicine. Petitioner prayed that
defendants (Joseph Jacobs and the Jacobs Pharmacy
Company) be restrained from selling or offering to sell
any of the medicine so injured, in the cases or the bot-
tles, or under the label, trade-mark, trade name or
name of petitioner as manufacturer, and from selling
any of the burned medicine as the manufacture of peti-
tioner.

The defendants demurred upon the grounds: The petition contains no cause of action against defendants, and the allegations in it are insufficient to authorize injunction or other relief against defendants; if plaintiff has [suffered] or should suffer injury because of the things complained of, it would have ample remedy, if any remedy, by action for damages against defendants, and no insolvency of defendants is alleged; the petition does not show wherein the medicine purchased by defendants is spurious or injurious, nor does it show the qualities, properties, quantities or ingredients of the medicine manufactured by petitioner, from which the charge made by petitioner might be fully investigated, but withholds the character and quality of the medicine and states that the medicine is a trade secret; the petition does not allege or show that any person or the public will be injured by the selling of the medicine, and plaintiff has no rights in this case because of any claim to trade-mark or label or both by the medicine, because plaintiff had manufactured and sold the medicine, and having done so, the medicine passed completely out of its control; and the petition does not set out any facts showing how or in what way petitioner would suffer irreparable damage and injury.

Defendants answered, in brief: The purchase of the medicine was by the Jacobs Pharmacy Company. About February 14, 1891, its representative, Joseph Jacobs, was approached by insurance agents, concerning a lot of S. S. S. that was in the then recent fire of H. J. Lamar & Sons, they stating that they were unable to get a satisfactory understanding with Lamar & Sons and wished defendant to make them an offer. Jacobs went and examined a great many of the cases of the medicine, particularly those that seemed to be most charred on the outside, and found them all in good condition, except a few loose bottles that were on the floor and

which were not included in the sale of the S. S. S. made to defendant. Defendant, knowing that S. S. S. was made in Atlanta by steam percolation and that it contained sufficient alcohol to preserve it, felt safe in making an offer for the goods, knowing that heat sufficient to injure a medicine thus prepared would either break the bottle or blow out the cork, neither of which had been done. Defendant finally purchased the goods. The lot of S. S. S. which he purchased was free from injury by the fire, and is the same kind of medicine as is manufactured and sold throughout the country by plaintiff. The insurance companies had, by agreement with Lamar & Sons, acquired the title to the medicine, and had the legal right to sell it to defendant. Defendant made the purchase after careful and diligent examination, acted in entire good faith in the transaction, and paid for it $1,994.50. Defendant has had samples of the medicine bought as aforesaid, as also samples of the medicine as sold generally by plaintiff and which had never been about the fire, analyzed and examined by capable experts, and all of the samples were of the same quality and value. Defendant denies that the medicine had been damaged by fire, had lost any of its virtue or is a spurious substance, and alleges that it is of the same quality, virtue and substance as the other medicine manufactured by plaintiff, whatever that may be. H. J. Lamar, the senior member of the firm of H. J. Lamar & Sons, is a large stockholder and the president of the plaintiff, and that firm were willing to purchase or retain the S. S. S. which defendant purchased from the insurance companies, but were not willing to give the price for it that defendant paid, which defendant believes was on account of the superior advantages enjoyed by H. J. Lamar & Sons in obtaining the medicine from plaintiff, by reason of the interest and official connection of H. J. Lamar with plaintiff and his connection with the firm.

The evidence was conflicting. The injunction was denied, and the plaintiff excepted.

J. C. REED and HOPKINS & SON, for plaintiff.

WEIL & GOODWIN, for defendant.

