## ANDY KERKENDALL v. STATE.

No. A-616.   Opinion Filed May 23, 1911.

(115 Pac. 612.)

1.   **ASSAULT AND BATTERY—Assault with Dangerous Weapon—Sufficiency of Evidence—Appeal—Review.** (a) When there is any evidence in the record from which the jury could legitimate-ly draw the conclusion of the defendant's guilt, this court will not set aside their verdict upon the ground of the insufficiency of the testimony, unless it clearly appears from the record that the jury were influenced by improper motives in convicting the defendant.

   (b) For evidence sustaining a verdict of guilty for unlaw-fully assaulting another with a dangerous weapon with intent to injure such person, see facts stated in the opinion.

2.   **JUDGMENT—Assault with Dangerous Weapon—Sufficiency.** For a judgment held to be sufficient upon a conviction for an as-sault with a dangerous weapon with intent to injure, see opin-ion, although said judgment is not commended in the matter of form.

3.   **JUDGMENT—Time—Waiver.** A defendant may waive the time allowed by law after his conviction before judgment can be pro-nounced against him.

(Syllabus by the Court.)

*Appeal from District Court, Pittsburg County; Preslie B. Cole, Judge.*

Andy Kerkendall was convicted of an assault with a dangerous weapon with intent to do bodily harm, and he appeals. Affirmed.

*Lester & Hammond,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. First. The first and second assignments of error challenge the sufficiency of the evidence to sustain the verdict.

J. G. Pate, the prosecuting witness, testified as follows:

"I got on the train and started to Wilburton, and I had been working for the deputy sheriff out there, and was then, and there was a nigger. He says, 'If you find that nigger that day, arrest him.' He had got away in the courthouse here, and that was my business down there that day, and I was sitting on the south side of the coach, on the right-hand side, and Mr. Kerkendall walked through the coach, and got a drink of water and came back, and I was sitting next to the window in the right-hand side, with my head half out the window, and he spoke something. I never noticed what he said, and just as I turned, he struck me with his fist, and I commenced knocking his licks off with one hand, and finally I slipped down, and one of my hands was on the floor, and I got one hand on the back of the seat to keep from falling between them, and commenced kicking him off with my foot, and he grabbed my foot and ran his hand in his pocket, and I think that was his left hand. I am not very certain which hand it was; but anyway he run his hand in his pocket, and I said, 'Don't let him cut me, boys.' I thought he was getting a knife, and he struck me with a pair of knucks. The scar is there now, and, when he struck me there, it kind of addled me, and he struck me again on the nose. Q. Is that the scar? A. Yes, sir; right there is the scar, and here between the places and I commenced hollering for them to, 'Take him off! Take him off!' and this feller Aaron grabbed the revolver, and I grabbed the muzzle, and he throwed it down on me, and said, 'Are you whipped? Are you whipped?' And I kept hollering, 'Take him off!' And two or three more ran over there and grabbed him. Q. Where were you carrying your revolver? A. In my left hip pocket, automatic Colts, and then the conductor came in and I stayed in the coach, and these other parties went in the baggage car and got me some

water, and I washed and went to Wilburton, and had my head dressed. Q. Did it bleed much? A. Right smart. Q. You say you don't know how many times he struck you? A. He left three scars. He struck at me about five times with knucks, and there is three scars left on me where the doctor put the plaster on those three. Q. You had a doctor to dress your head after you got to Wilburton? A. Yes, sir; Dr. Vance."

The state introduced several other witnesses whose testimony corroborated that of the prosecuting witness.

The defendant gives an entirely different version of the difficulty. He testified as follows:

"When I got on the train that morning, I went back in what is called the smoker and sat down, and Mr. Pate and several other passengers were sitting in the rear end of the car, and I got up and walked through to get a drink of water, and, when I returned back, Mr. Pate says, 'Say Andy, I want to see you a minute,' and I just sat down in the seat, and he says, 'What did you go report me in the local, and claim that I scabbed ' And I said, 'Simply because you did scab on us at the powder plant, and I know you did do it.' And he threw his hand back to his hip, and I hit him and knocked him against the window. I got up and he got up, and we passed two or three licks, and I knocked him down, and, when I knocked him down, he fell over the seat, and his head hit the bottom part of the window, and he grabbed the seat with his left hand, and seemed like the gun was in this pocket and his coat dropped down and he run his hand in here, and I grabbed him by his foot and kept hitting him every time he would raise his head up, and he was hollering, and, just as Mr. Aaron ran in around like that, he got this gun just about this position, and Aaron grabbed the gun and took it away from him, and told me to quit, and I quit, and that was all there was to it."

The defendant's version of this difficulty was corroborated by the testimony of several other witnesses.

The defendant was prosecuted under section 2337 of Snyder's Compiled Laws of Oklahoma of 1909, which is as follows:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another,

with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the state prison not exceeding five years, or by imprisonment in the county jail not exceeding one year."

We think the testimony for the state sustains the offense charged under this statute. It is true that the state's evidence was contradicted, but it was for the jury to settle all questions as to the credibility of the witnesses and conflicts in the testimony, and we cannot say in the light of the record that their verdict is contrary to the evidence. When there is any evidence in the record from which the jury could legitimately draw the conclusion of the defendant's guilt, this court will not set aside their verdict upon the ground that the testimony is not sufficient to support the verdict, unless it clearly appears from the record that the jury was influenced by improper motives in convicting the defendant.

Second. The third assignment of error is as follows:

"Because there was no judgment and sentence rendered in said case against the defendant as is provided by law. (A) Because the judgment and sentence does not state what offense the defendant was found guilty of. (B) Because the record does not show that at the time defendant appeared in court for judgment and sentence he was informed of the nature of the indictment or offense, or his plea and of the verdict of the jury, as is required by law."

This assignment of error is based on section 6910, Snyder's Comp. Laws Okla. 1909, which is as follows:

"When the defendant appears for judgment, he must be informed by the court or by the clerk under its direction of the nature of the indictment, and his plea and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him."

The recitals of the judgment are as follows:

"The State of Oklahoma v. Andy Kerkendall, Defendant. Judgment and sentence on indictment for assault with dangerous weapon in Pittsburg county, state of Oklahoma. The prisoner, the above-named Andy Kerkendall, defendant, being personally

present in open court, and having been legally convicted by a jury of twelve good and lawful men for the offense of assault with dangerous weapon, now, on this the 19th day of October, 1909, the same being one of the regular days of October, 1909, term of this said court, the said defendant, Andy Kerkendall, was brought to the bar of the court in custody of the sheriff of said county, and, it being demanded of him what he has to or can say why the sentence of the law upon conviction of guilty heretofore passed upon him by the jury in this cause on the 8th day of Oct. A. .D. 1909, shall not now be pronounced against him, he says he has nothing further or other to say than he has heretofore said. Whereupon, the premises being seen, and by the court well and sufficiently understood, it is considered by the court that the said Andy Kerkendall for his offense aforesaid, be imprisoned in the county jail for Pittsburg county, situated at McAlester, Pittsburg county, Oklahoma, for the term and period of six (6) months at hard labor from this date, and thereupon the court notified the defendant of his right of appeal."

While it is true that the judgment in this case is not a model in form, yet we think that it sufficiently shows the essential elements of a judgment    Section 6487, Snyder's Comp. Laws Okla. 1909, is as follows:

"The rule of common law that penal statutes are to be strictly construed, has no application to this chapter. This chapter establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice."

The record in this case shows that the appellant was duly arraigned and pleaded not guilty, and was present during the entire trial and when the verdict was rendered, and therefore that he could not have suffered any possible injury because at the time the judgment of the court was pronounced against him he was not informed of the nature of the indictment, and of his plea to said indictment, and of the verdict of the jury in this cause. In the light of section 6487, Snyder's Comp. Laws Okla. 1909, we are compelled to construe the Code of Criminal Procedure of this state liberally, and in furtherance of justice. This

compels us to ignore all mere defects of form which do not deprive the defendant of some substantial right. We think that the entire record shows that every right guaranteed to appellant by section 6910 was accorded him in this trial. But, even if we were to hold the judgment in this case fatally defective because at the time it was pronounced appellant was not informed by the court or by the clerk under its direction of the nature of the indictment, and of his plea, and of the verdict of the jury, we would still not be able to reverse this conviction on that account, but would simply send the case back for resentence.

Third. The appellant's fourth assignment of error is as follows:

"Because the judgment and sentence of the court was at another and different time from that designated in the orders of the court."

Upon this question the record is as follows:

"Comes on this day the defendant, Andy Kerkendall, and, waiving the time required by law in which to pronounce sentence herein, the court proceeds to sentence said defendant, Andy Kerkendall."

This absolutely disposes of appellant's fourth assignment of error, and it need not be considered.

These are all of the errors complained of by appellant in the brief filed in his behalf by the counsel.

Finding no error in the record, the judgment of the trial court is in all things affirmed.

ARMSTRONG and DOYLE, JUDGES, concur.