## ROBERT L. DEATON v. STATE.

No. A-1049.   Opinion Filed May 18, 1912.

(123 Pac. 701.)

1.   **APPEAL—Review—Questions of Fact.**   When the testimony in the record tends reasonably to support the findings of the jury, this court will not reverse a judgment of conviction upon the facts.

2.   **LARCENY—Evidence—Sufficiency.**   For facts sufficient to sustain a conviction, see opinion.

3.   **APPEAL—Review—Credibility of Witnesses.**   As a general rule, this court on appeal will not undertake to review the evidence in so far as its weight and the credibility of the witnesses are concerned.

(Syllabus by the Court.)

*Appeal from District Court, Stephens County;*
*Frank M. Bailey, Judge.*

Robert L. Deaton was convicted of larceny, and appeals. Affirmed.

The plaintiff in error, Robert L. Deaton, was convicted at the November, 1910, term of the district court of Stephens county on a charge of grand larceny, and his punishment fixed at imprisonment in the state penitentiary for a period of one year and one day.   The conviction is based upon a charge that Robert Deaton, the accused, Robert Sprouse, Sr., and Bob Billups stole a trunk of merchandise from the Chicago, Rock Island & Pacific Railway station at Comanche, in Stephens county, in January, 1910.

On behalf of the state, witness Loucine Gilmore testified: That on January 31, 1910, he was clerk at the depot in Comanche; that he knew Bob Sprouse and Bob Deaton; that Bob

Sprouse came to the depot and got a trunk, an unusually large black trunk; that he presented a check corresponding to that attached to the trunk; that upon the authority of the corresponding check he delivered the trunk in the depot to Sprouse; that he had not seen the trunk since that time except in the sheriff's office. On cross-examination he testified: That he did not see the defendant Bob Deaton, at the time Sprouse came and got the trunk; that Deaton did not apply for the trunk; that McDonald, a Rock Island detective, was there at the time, also a boy about five or six years old; that he talked to Sprouse about his getting such a good looking trunk; that Sprouse didn't tell him to whom the trunk belonged.

Witness J. L. Waters testified: That in January, 1910, he lived at Waurika and was night baggage man at the Rock Island depot; that he remembers the trunk in question being delivered for transportation at Waurika, and he heard of complaints of the trunk, which belonged to Mrs. Susie Fields Hunter, being missing; that the trunk was checked from Waurika to Oklahoma City; that it was delivered to him by Arch Hunter; that the trunk delivered to him at Waurika was the same one he afterwards saw in the sheriff's office; that it was delivered to him at Waurika on the 9th day of January; that he did not know Bob Deaton or Bob Billups.

Witness Mrs. Susie Fields Hunter testified: That she lived in Waurika in January, 1910, and was the owner of a large black trunk with steel hinges at that time; that she had started to Missouri and went by Oklahoma City and checked the trunk from Waurika to Oklahoma City on the 9th day of January; that the trunk did not arrive at its destination; that the next time she saw it, it was in Billups' possession; that it was then brought to the sheriff's office; that it contained ladies' wearing apparel, children's wearing apparel, linen, cut glass, clock, and shotgun; that the market value of the property in the trunk was $350 or $400; that she paid $27 for the shotgun; that she did not give permission to Sprouse, Deaton, or Billups to take the trunk; that she afterwards saw part of the contents of the trunk at Bob Billups'

house.   On cross-examination she testified that she knew Bob Deaton at the time she lost the trunk.

Witness Mrs. Bob Sprouse testified:   That in January she lived a mile and a half north of Comanche; that she knew Bob Deaton and Bob Billups at that time; that in the month of January her husband brought a trunk to their house, about 5 o'clock in the evening; that Bob Billups and Bob Deaton came out there and took the trunk away; that this occurred about 9 o'clock in the evening; that, when she went in the house, Deaton and Billups had taken the contents out of the trunk; that the trunk had not been opened prior to the time Deaton and Billups arrived; that she did not hear Deaton say anything about the trunk; that she told them to take the trunk away; that Bob Billups took the gun; that he left some of the things on the floor; that Deaton and Bob Billups carried the trunk out.   On cross-examination she testified that when she went in there Bob Billups was taking the contents out; that she did not know who was driving the team; that Billups did the talking.   ·

Witness Robert Sprouse, Jr., testified:   That he is the son of Robert Sprouse, Sr., and that he is nineteen years old; that in January he lived one and a half miles north of Comanche, and knew Bob Deaton and Bob Billups; that in January his father came home with a trunk one evening; and that night Bob Deaton and Bob Billups came out and got it.—

"Did you hear what was said?   A. Not much.   They said they would open it and see what was in it.   *   *   *   Q. Was anything said about 'Let's open it and see if there is any money in it'?   A. Yes.   Q. Do you know which one of the boys said that?   A. No, sir.   I think it was Bob Deaton that said, 'Let's see if there is any money in it.' "

—That they took the trunk and contents away about 9 o'clock that night.   On cross-examination he testified that he did not know Deaton's livery team except one of the horses; that Bob Deaton untied the horses and got into the buggy.

Robert Billups, a codefendant, testified:   That in January he lived in Comanche; that he is one of the defendants in the

case; that he knew Bob Deaton and Bob Sprouse at that time; that the trunk found in his possession he got at Bob Sprouse's.

"Q. Tell the jury all you know about that trunk and how you came in possession of it. A. Bob Deaton met me as I was going home from work that afternoon, and asked me if I wanted to take a drive that night, and I said I didn't care, and I asked him how far he wanted to go, and he said two or three miles, and I went home and came back, and we drove out, and I got possession of this trunk."

—That at the time he asked witness to go with him the defendant did not say where he was going, but told witness to come to defendant's father's livery stable; that he went there and got into the buggy and drove to the place defendant told witness to meet him; that he did meet witness by the bridge; that they found the trunk at Sprouse's house; that as they drove out there defendant told witness that he had a trunk out there; that he had not given any one a check for that trunk that day or any other time; that as they drove back defendant told witness that he had no place to put the trunk and did not know what to do with it, and witness told defendant that he would take it to his house and keep it until he had a place for it; and that that was where the officers found it; that the shotgun was pawned to L. E. Toney, and that the defendant at the time was paid $5 of the $13 received for the shotgun; that he had an idea that the trunk was stolen; that he and Deaton talked about it; that from what defendant said witness supposed defendant knew it was stolen; that the shotgun was the only thing that was disposed of out of the trunk; that witness was indicted on another charge for another trunk. And on cross-examination testified: That he had seen the trunk at the depot the day before he went out to Sprouse's that night; that he thinks the trunk in question, together with another trunk, with the larceny of which witness is charged, came to the Comanche depot together; that he did not give Bob Sprouse a check for the trunk, and therefore did not see the check to the trunk; that he noticed the trunk at the depot because it was an unusually large looking trunk; that Bob Deaton asked witness to go to Sprouse's that night; that he did

not go to Deaton's livery barn to hire a livery team; that he did not ask Donaldson to go with him out in the country; that he first saw Deaton that night at the livery barn; that Deaton stopped witness at the door of the livery barn; that he carried the trunk from Sprouse's to his home; that the contents were left at his home except the shotgun which witness pawned; that he told defendant that he would like to get the trunk moved from his house, but defendant did not come after it; that he was not in Comanche when the train bringing the trunks arrived there; that he was not in Waurika on the night before the trunks arrived at Comanche the next morning; that he gave Jim King a part of the money secured for the shotgun; that on the same day this large trunk was taken to Sprouse's witness and defendant Deaton together carried a small trunk to witness' house; that defendant came to witness and told witness that he (defendant) had a trunk that he wanted to bring to witness' house; that the trunk was at the depot; that defendant told witness he (defendant) had no place to keep the trunk and wanted to take it to witness'house.  And on recross-examination testified:  That Deaton came to his house and that is the place where he had the conversation with Deaton on the 10th of January; that this happened before they went to Sprouse's; that defendant and witness carried the trunk in their hands a little after sundown; that he did not have a check for the trunk, but that Deaton did.

On behalf of the accused, witness Clint Bounds testified: That after the trunks arrived at the depot in Comanche Bob Billups presented a check for one of them; that he did not see Deaton there at the time; that Billups pointed out another trunk at the depot but did not say anything about a check; that Billups after giving witness the check for the trunk rolled it out on the platform; that he did not know who helped carry the trunk away.

Witness Clarence Donaldson testified:  That some time in January Bob Billups asked him if he wanted to go riding; that

he was going up north of town. On cross-examination he said that nothing was said about a trunk.

Witness Jim King testified: That in January he and Billups went to Waurika; that they were going to pull off a deal at Comanche; witness was working for the Rock Island as a secret service man; that Billups showed witness some checks; that witness and Billups sent some checks to Mr. Faucett, the man for whom witness was working; that Billups told witness that he had changed a check on Mrs. Field's trunk at Waurika; that Bob Deaton furnished some information to witness as to the trunks; that after the trouble came up Billups wanted to lay the crime onto Deaton; that he does not know what Billups did with the money he got for the shotgun which he pawned. And on cross-examination testified: That he had been discharged from the Rock Island service charged with stealing; that the Rock Island people had told him to steal stuff with people whom he believed to be stealing.

Witness L. E. Toney testified: That Billups pawned the shotgun to him; that he gave $13 for it.

The accused in his own behalf testified: That he was employed by Billups to take a team and buggy and go to Sprouse's for the trunk, and denied the testimony of the state; that Billups asked witness to load the trunk onto the buggy; that he did so. That he told the secret service man of the fact that he heard the trunks had been stolen; that he did not get any of the money secured for the gun. On cross-examination he testified: That he had known Mr. Billups about five or six years prior to the trunk trouble. He denied any knowledge as to. the fact that the trunk was stolen, but the kind of trunk aroused his suspicions; that Mrs. Sprouse said she wanted to get the stuff away from there, but did not say that it was stolen; that they went after the trunk about 7:30 or 8 o'clock and got back about 9 o'clock; that he did not know whether the trunk was stolen or not at the time, but his suspicions were aroused; that when he was searched after being charged with the crime there was found in his clothing at least one check, but he did not know whether

there was more than one; that when they searched his house he had a duplicate check there; that he also had one on his person; that a lady who had driven out in the country had left one of the checks with him.

In rebuttal on behalf of the state, witness Mrs. Bob Sprouse testified: That Bob Billups and Deaton came into the house together; that Bob Deaton was in the house all the time.

And witness, Bob Sprouse, Jr., her son, testified that Bob Billups and accused, Deaton, came to their house together, and came in together; that they were together all the time, and left together.

Special Officer McDonald and Deputy Sheriff Thompson testified that they searched the premises of the accused, Deaton, by authority of a search warrant, and found two or three trunk checks, one from Chico, Tex., one from Sugden, and one from Walter or Hastings; that one of these was a string check with a duplicate on it. McDonald testified further that he was never able to locate the property that these checks called for.

*Wilkinson & Speer* and *A. W. Reynolds,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., and *C. J. Davenport,* for the State.

ARMSTRONG, J. (after stating the facts as above). The facts disclosed by this record would have warranted the jury in reaching the conclusion that Billups, the accused, and Sprouse were in a conspiracy wherein baggage checks were to be changed by them, and the destination of such baggage changed to Comanche, and the property contained in such packages stolen and appropriated to the use of these parties.

Billups was in the drayage business. It is but natural and reasonable for the jury to conclude that if he was the only person interested in the stolen property found at the home of Sprouse he would have used his own team and wagon for the purpose of getting the trunk and contents to and away from Sprouse's. The proof shows, however, that instead Sprouse

carried the trunk home and a buggy was secured from the livery stable of the accused's father to take it away. The time this team was secured and the drive made was very suspicious. It was in the nighttime. They went to the home of Sprouse and went through the trunk together, the accused saying, "Let's see whether there is any money it it." He pleads innocence, but acknowledges that there was much suspicion that something was wrong. The trunk was an unusually large one containing wearing apparel indicating that the owner was not one occupying the same station in life as that occupied by the accomplice Billups. The accused had known Billups for years, and the jury was warranted in concluding that he knew Billups was not the owner of any such trunk or property, and had no occasion for leaving the same with Sprouse. His actions are inconsistent with innocence. He profited by receipt of $5 of the $13 received for the shotgun. The checks found in his possession, which are the evidence of right to the possession of baggage, are the tools necessary to perpetrate a crime of this character. Other checks were found in his trunks, not at the livery stable, but in his father's home. He explained possession of only one of them. These checks appear to have been evidence of a system or scheme to secure possession of the trunks, as was done in the case under consideration. What inferences and legitimate conclusions the jury came to are not before this court. But under all the facts they found the accused guilty, and we think justly so.

In *Alderman v. Territory*, 1 Okla. Cr. 562, 98 Pac. 1026, this court said:

"Where a defendant is convicted on testimony of an accomplice, and the evidence is clear and direct, this court will not reverse the judgment of the lower court unless it is able to say that the record does not contain any evidence independent of the testimony of the accomplice which tends to connect the defendant with the commission of the offense."

This is a stronger statement of the rule than is necessary for the purpose of the case under consideration. In so far as the testimony is concerned, the Alderman case is sufficient authority for affirmation of the case at bar.

The question of the sufficiency of the evidence was presented to the trial court by demurrer to the evidence and in motion for a new trial. The trial judge found the evidence sufficient, and, although the evidence is contradictory in some respects, this court has not the advantage of viewing the witnesses as they testify, and judging as to whether such witnesses were giving truthful testimony. The issues of fact are disputed. The testimony tends reasonably to support the verdict of the jury. This court will not undertake to review the evidence so far as its weight and the credibility of the witnesses are concerned. *Moore et al. v. State,* 4 Okla. Cr. 212, 111 Pac. 822; *State v. Maben,* 5 Okla. Cr. 581, 114 Pac. 1122; *Kerkendall v. State,* 5 Okla. Cr. 570, 115 Pac. 612.

The other assignments urged are without merit. They each involve questions heretofore disposed of by this court.

The judgment of the trial court is affirmed.

FURMAN, P. J., and DOYLE, J., concur.