## DAVID ALMERIGI v. STATE.

No. A-2951.    Opinion Filed April 16, 1920.

Rehearing Denied May 29, 1920.

(188 Pac. 1094.)

(Syllabus.)

1.    HOMICIDE—"Unwritten Law" as Defense. The so-called unwritten law, the right to avenge wrongs done female members of one's family by killing the wrongdoer, is not a recognized rule of action in Oklahoma.

2.    EVIDENCE—Nonexpert Opinions—Sanity of Defendant. Persons who are not experts on insanity, but who have had opportunity to converse with and observe the actions of one whose sanity is at issue, may legally testify as to whether such conversations and actions indicated sanity or insanity; the weight of such evidence being for the jury.

3.    EVIDENCE—Flight and Concealment of Defendant. Flight from the scene of a crime and acts done by a fugitive to hide his identity are circumstances tending to show guilt, and proof of them is admissible in evidence.

4. **HOMICIDE—Defensive Evidence—Illicit Relations Between Deceased and Defendant's Wife.** Proof of illicit relations between a deceased and the wife of a defendant, whom he is charged with killing on account of the relationship, is entitled to go to the jury in mitigation of the punishment, and when insanity is the defense based upon these wrongful acts, such proof is also entitled to go to the jury in support thereof when the facts were known to the defendant and it is made reasonably to appear that his acts and conduct were influenced thereby.

5. **HOMICIDE—Evidence—Uncommunicated Threats by Deceased.** Unless there is evidence tending to show self-defense, uncommunicated threats made by the deceased against the defendant are not admissible in evidence.

*Appeal from District Court, Coal County;*
*J. H. Linebaugh, Judge.*

David Almerigi was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*A. T. West, J. G. Ralls,* and *Pruiett, Sniggs & Patterson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, David Almerigi, hereinafter called the defendant, was informed against for the murder of Ben Jones, convicted of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary at McAlester for a term of four years. To reverse the judgment rendered on the verdict he prosecutes this appeal.

It is not contended in the defendant's brief that the evidence is insufficient to support the verdict of the jury and the judgment rendered thereon; therefore it is sufficient for a proper review of the errors insisted upon by the defendant to note that there is evidence tending to show

that the defendant resided with his family, consisting of a wife and several young children, at Coalgate, Coal county, Okla., for several years prior to and at the time the homicide herein charged was committed, and that the deceased also resided in the same town. The defendant and his wife had known the deceased for some three years prior to the killing. The defendant and his wife had upon joint account engaged in the violation of the prohibitory liquor laws of the state at the home and store of the defendant, in which store the defendant had kept a gun. The deceased and the defendant had an altercation in the store shortly before the homicide, and the defendant told the deceased to stay away from his place and let his family alone, to which deceased replied that he would come whenever he got ready, and he pulled back his coat, showed his gun, and asked the defendant to come outside. About a month before the homicide was committed the wife of the defendant left her home and children, except her young baby, and went to Lehigh with the deceased, where they remained two days and nights; then she returned to her home. Without objection she testified that she informed the defendant where and with whom she had been and what had taken place between them and that the deceased used to come to see her every time he got a chance. Shortly after the defendant's wife informed him of her escape to Lehigh the defendant left his home and remained away some three or four weeks. He returned the night of the homicide, and upon looking into the window saw his wife and the deceased standing up in the kitchen of defendant's home hugging and kissing. Almost immediately after the display of intimacy and affection the deceased left, going out of the back door of the kitchen. Immediately two shots were heard, and early the following morning the body of the deceased was found about 175

yards from the house, his death having been caused by gunshot wounds. His buggy was found in front of the home of the defendant, and blood was trailed from the body into the yard of the house of the defendant. The morning the body of the deceased was found the sheriff of Coal county made a search for the defendant, including a seach of his residence, and did not find him. Afterwards the defendant was found and arrested in St. Louis, Mo., and first stated that the deceased had killed himself, and afterwards voluntarily confessed that he (defendant) killed the deceased just as he (deceased) came out of the door of the kitchen. There was also evidence introduced by the state against the objection and exception of the defendant that after the homicide the defendant cut off the mustache which he had worn for several years.

Against the objection of the defendant upon the ground that a proper predicate had not been shown for the introduction thereof, the testimony of Walter Will Lewis, given by him at a former trial of the case, was admitted. The witness Lewis was not in court, and prior to offering the testimony the state introduced evidence that a subpoena duly issued for him, and that the officer in whose hands the same had been placed for service had made diligent search in Coal county for him, and had been unable to find him, and did not know his whereabouts.

The defendant also objected to the introduction of the evidence of two St. Louis officers, who were connected with the arrest of the defendant in said city, that the conversations and actions of the defendant when so under arrest were those of a sane man, upon the ground that these witnesses were not competent to express an opinion in regard thereto, and excepted to the introduction of the evidence.

The defendant offered to prove by Paul Harris that two days before the homicide the deceased came to a shop in which the witness was employed to buy some meat for the wife of the defendant, and was advised by the witness that he (deceased) had better stay away from the house of the defendant; that he might get into trouble; thereupon the deceased exhibited a six-shooter and said that it would take care of Dave; that he would go to the place whenever he got ready. The court sustained an objection to this offered evidence, and the defendant excepted.

The defendant also offered to prove that the deceased and the wife of the defendant had slept together in Lehigh two nights and indulged in sexual intercourse. The court sustained an objection to this evidence, and the defendant excepted.

There was also evidence on the part of the defendant tending to show that shortly before and at the time of the homicide the defendant was insane, and evidence to the contrary was introduced by the state.

The defendant did not testify in his own behalf.

The defendant requested the court to give the jury the following instructions, which the court refused to do, and the defendant reserved exceptions:

(a) "You are instructed that a man has a right to protect himself and members of his family against the onslaught of any other person, and to make such resistance sufficient to prevent such acts although it may go to the extent of taking human life."

(b) "Gentlemen of the jury, you are instructed that the defendant, David Almerigi, had a right to be at his own home at the time Ben Jones was killed, and had a right to be armed."

The court, among other instructions, gave the jury the following instruction, to which the defendant excepted:

"You are instructed that in this case the state has offered testimony tending to show that the defendant made certain statements after his arrest and while he was in custody charged with the offense of which he is being tried, and which statements are relied on in part to establish the defendant's guilt of the offense charged against him, and the court instructs you that a confession by one charged with an offense should be carefully scrutinized and received with great caution, and when deliberately and voluntarily made may be considered as evidence for or against the person making them the same as any other evidence."

The defendant earnestly insists that the court committed reversible error in admitting the testimony of the witness Lewis given at a former trial of this case. With this contention we cannot agree. A proper predicate was laid for the introduction of this testimony, and it was legally admitted. *Fitzsimmons v. State,* 14 Okla. Cr. 80, 166 Pac. 453; *Edwards v. State,* 9 Okla. Cr. 306, 131 Pac. 956, 44 L. R. A. (N. S.) 701.

It is also contended that the court committed reversible error in admitting the evidence of the officers connected with the arrest of the defendant in St. Louis as to his conversations and actions being that of a sane man. This contention, we think, not well founded. It was not a condition precedent that they should have been shown to be experts on insanity. The evidence of nonexpert witnesses who testify concerning the defendant's sanity, and whose opportunity of observing him has been shown, is properly admitted. The weight of their testimony is always for the jury. *Fish v. Poorman,* 85 Kan. 237, 116 Pac. 898; *State v. Truskett,* 85 Kan. 804, 118 Pac. 1047.

The defendant also complains that the court committed reversible error in admitting evidence that after the homicide the defendant had shaved off his mustache which he had worn for years, and this complaint, we think, not well founded.

When a defendant flees from the scene of the crime with which he is charged, any act that tends to hide his identity is an incriminating circumstance which may properly go to the jury.

The offered evidence of the witness employed in the butcher shop of statements made by the deceased when buying meat for the defendant's wife, we think, were properly excluded. The theory of the defendant that such statements were in the nature of threats against the defendant we do not think well taken, but, if the theory of the defendant be admitted to be correct, certainly the same was not admissible, because there is not an element of self-defense shown by the evidence in this case.

Again, it is urged that the court committed reversible error in denying defendant the right to introduce proof tending to show that the deceased and defendant's wife had slept together for two or three nights and had been criminally intimate for some time. This proof was offered by counsel for no specific purpose. It was undoubtedly entitled to be admitted in support of the plea of insanity and would also have been entitled to go to the jury in mitigation of punishment. But it would not be admissible in any state of the case under the record now being examined in support of a defense of self-defense, for there is no element of self-defense disclosed by proof offered or admitted on behalf of either side.

The general doctrine that the unwritten law, so called —that is, the right to avenge a wrong done a female member of one's family by killing the wrongdoer—is not a recognized rule of action in Oklahoma, means that the law of this state does not recognize such act as being one upon which self-defense or legal justification can be based, but it does not mean that proof of these facts, when properly offered upon a plea of insanity or when offered in mitigation of punishment, are to be excluded. It is for the jury, under all the facts, including these, to say whether or not the crime is manslaughter or murder; and in cases where insanity is pleaded on this ground these facts are entitled to be considered in connection with other proof offered on that question. In the instant case, however, all these facts were before the jury, and in view of the fact that no tender was made for any specific purpose, and of the further fact that the jury were in possession of details as to the acts desired to be introduced by the defendant, we are impelled to the conclusion that no injury resulted to him on this ruling of the trial court. It is clear that without this excluded proof the jury had before them undenied evidence that deceased and the wife of the defendant had maintained improper relations for a long time prior to the homicide, and that the defendant had learned of these unlawful relations; that on the night of the homicide and immediately before it occurred the defendant saw deceased and his wife in the kitchen of defendant's home hugging and kissing and engaging in other acts of intimacy. There can be no doubt from these and other facts that the jury were fully advised from the evidence before them that the deceased and the wife of defendant had maintained adulterous relations, and that this condition was known to the defendant prior to the homicide.

There is no evidence in this case that the defendant acted in self-defense in killing the deceased, nor that any onslaught was being committed upon any member of the defendant's family at the time the homicide was committed; hence requested instruction No. A was properly refused. *Ikelbarger v. State*, 8 Okla. Cr. 316, 127 Pac. 707. Requested instruction marked B correctly states an abstract principle of law, but is not applicable to any issue involved in this case, and was therefore properly refused.

The instruction given the jury and of which the defendant complains correctly states the law. The evidence as to the defense of insanity interposed by the defendant being in direct conflict raised a question of fact exclusively within the province of the jury to determine, and the court having carefully and correctly instructed the jury in regard thereto, and the jury having in their finding of guilty necessarily decided against the insanity plea of the defendant, this court is without authority to interfere with the verdict rendered. We think the jury has been lenient with him.

Upon a careful review of the whole case we have been unable to find any substantial error in the trial, and the judgment is accordingly affirmed.

DOYLE, P. J., and MATSON, J., concur.