MELBERT HUDSON v. STATE.

No. A-10067.     Feb. 2, 1944.

(145 P. 2d 774.)

O. J. Bennett, of Fairfax, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Melbert Hudson, was charged by information filed in the district court of Osage county with the crime of burglary in the second degree, after having theretofore been convicted of burglary in the second degree and also having previously been convicted of the crime of destroying public property, each of said prior convictions being a felony under the laws of Oklahoma. In accordance with the verdict of the jury, the defendant was sentenced to the minimum imprisonment provided for said offense, towit, the term of ten years in the State Penitentiary.

At the time of the arraignment of the accused in the district court, counsel was appointed to represent the defendant and said counsel thereafter, in all proceedings, appeared in behalf of said defendant. After the appeal was lodged in this court, counsel for defendant filed a brief urging three propositions for a reversal of this case. The Attorney General filed a motion to strike the case-made. Subsequent thereto and after the submission of the case for final disposition, the Attorney General withdrew his motion to strike case-made and filed an answer brief.

We shall consider the three contentions of the defendant in the order they were presented in his brief.

It is first contended that the Habitual Criminal Act, 21 O. S. 1941 § 51, should not apply to a person whose only prior sentence was to the State Reformatory at Granite; it being argued that the word "reformatory" in itself showed that the commission of a person to said institution was not only for the purpose of punishment but

mainly it was meant to apply to those of tender years who had committed petty offenses for the purpose of their reformation, and that since said Habitual Criminal Act refers to imprisonment in the penitentiary it could in no wise apply to one who had been convicted but committed to the State Reformatory at Granite.

The Habitual Criminal Act, supra, reads as follows:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction, is punishable therefor as follows:

"1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five years, such person is punishable by imprisonment in the penitentiary for a term not less than ten years.

"2. If such subsequent offense is such that, upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten years.

"3. If such subsequent conviction is for petit larceny, or for any attempt to commit an offense which, if committed, would be punishable by imprisonment in the penitentiary, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding five years."

57 O. S. 1941 § 281 pertains to the establishment of the State Reformatory at Granite and reads as follows:

"There is hereby created, located and established within one mile of the corporate limits of the town of Granite, Greer county, the Oklahoma State Reformatory. All persons between the ages of sixteen and twenty-five years

heretofore convicted of any crime whose punishment is by imprisonment shall be confined at either the Oklahoma State Reformatory or the State Penitentiary in the discretion of the State Board of Prison Control; and all persons between said ages hereafter convicted of crime, whose sentence to imprisonment shall be not to exceed five years, shall be confined at either the Oklahoma State Reformatory or the state penitentiary, in the discretion of the court sentencing said persons to imprisonment. The Oklahoma State Reformatory shall be under the general charge and management of the said board of control."

57 O. S. 1941 § 284 further provides:

"It shall be the duty of the courts of Oklahoma to sentence all as hereinbefore specified persons who shall be convicted of crime and whose punishment is imprisonment to the penitentiary at McAlester or to the Oklahoma State Reformatory at Granite, as hereinbefore provided."

It is apparent from this statute that the penal institution at Granite, although termed by its name as the State Reformatory, is in reality a sub-prison or penitentiary. Under the express terms of the act, discretion was vested in the trial court to sentence persons between the ages therein stated to either the State Reformatory or the State Penitentiary. The records of this court will disclose that some of the most hardened criminals involved in some of the appeals disposed of by us were inmates of the penal institution at Granite. We do have a state training school for juvenile offenders at Pauls Valley, 10 O. S. 1941 ch. 12. It is entirely distinct, however, from the penal institution at Granite. No cases are cited by counsel for defendant to sustain his proposition and we feel that under the reasonable interpretation of our statutes this contention is without merit.

It is next contended that the court erred in overruling the demurrer of defendant to the evidence of the state. A

short summary of the evidence will be sufficient to refute this contention. The defendant was charged with the burglary of the house of one John Hickey. Each of these parties was of Osage Indian descent and had lived as neighbors in the town of Fairfax for many years. The defendant had visited in the Hickey home and had knowledge of the fact that Hickey kept a large number of dimes in a dresser drawer. At the time in question Hickey and his wife went to a motion picture show about 7 p. m. When they returned home two hours later they noticed the screen had been cut, the hook unfastened and the window was open. Upon entry into the house they found that approximately $30 in dimes had been taken from the dresser drawer. The police officers were notified. The defendant was arrested a few minutes later in a car with two companions in front of a tavern where he had just paid for three packages of cigarettes and three bottles of beer with dimes. The arresting officer searched the defendant and found $27 in dimes; later at the city jail he found another dollar in dimes.

The evidence further showed that after the policeman had taken the defendant to the city jail, the defendant grabbed the officer's pistol and fled. He was later arrested in the town of Ralston.

The court clerk was called to the witness stand upon behalf of the state to prove the prior convictions, at which time the following proceedings occurred:

"Mr. Fink: (Attorney for Defendant) Now, this witness is for the purpose of proving the previous offenses and we can save the time of the Court by admitting the allegation in the Information with regard to former offenses.

"Mr. Carman: (County Attorney) Well that obviates the necessity of proof.

"Mr. Fink: That is correct.

"Mr. Carman: And that he is the same defendant as alleged in the Information.

"Mr. Fink: That is correct, yes sir."

The only evidence interposed on behalf of defendant was the testimony of defendant himself. He admitted entering the Hickey home through a window and taking the dimes. He further testified that he and the prosecuting witness were good friends and that he had been to Hickey's home several times, both while Hickey was there and while he was away, but on this particular night when he took the money he went to see Hickey and found no one at home. That he was wanting some money to buy some liquor to go on a spree. That he unhooked the screen, entered the house and took the dimes as related by the state's witnesses. That he intended to buy some whisky and take it back and divide it with Mr. Hickey. That he seized the officer's gun and fled because he did not want to go back to the penitentiary.

It is unnecessary to comment at very great length on this evidence. The possession of the stolen property by the defendant shortly after the burglary had been committed, his flight from the jail, his acquaintanceship with the Hickey home and knowledge of the fact that the dimes were hidden in the house were sufficient circumstances to make a prima facie case. The defendant, in attempting to explain his possession of the stolen property, admits his guilt of burglary. The explanation which he offered was not even a defense as he does not contend that Hickey knew that he was entering his home or had given him permission to do so, but was rather an attempt on the part of the defendant to justify his act by reason of the fact that he and Hickey were friends and he felt that it would be all right with Hickey.

It is next contended that the court erred in allowing the witnesses Jim Clark and Lee Reddick, over the objection of defendant, to testify to matters wholly irrelevant to the issue, which testimony prejudiced the jury against defendant.

The testimony objected to related to the escape by the defendant from the officers. It detailed the manner in which the escape was perfected and the details surrounding his arrest the next day.

It has been frequently held by this court that the state, as a part of its case, may prove the flight of the defendant as a circumstance tending to prove his guilt. Pittman v. State, 8 Okla. Cr. 58, 126 P. 696; Almerigi v. State, 17 Okla. Cr. 458, 188 P. 1094; Littrell v. State, 21 Okla. Cr. 466, 208 P. 1048; Quinn v. State, 52 Okla. Cr. 81, 2 P. 2d 970.

In Quinn v. State, supra, it is stated:

"The main contention is that the court erred in permitting the state to offer testimony of the difficulty in the elevator. The state insists this evidence was admissible as showing an attempt to escape. Evidence of resistance to arrest, flight, escape or attempt to escape, is generally held admissible as showing a consciousness of guilt. The presumption arising from such conduct may be rebutted, and it is for the jury to say whether or not the conduct is due to a consciousness of guilt. 1 Wig. on Ev. 276; People v. Talbe, 321 Ill. 80, 151 N. E. 529; Cox v. State, 25 Okla. Cr. 252, 220 P. 70. The surrounding facts and circumstances in this case render this evidence competent. Unexplained as it was, the jury must have believed the attempt to use the pistol was in an attempt to escape."

Although the above three propositions are all of the ones which were presented in the brief of the defendant, this court has carefully examined the entire record to determine whether, in addition to the alleged errors com-

plained of, there might be some fundamental error committed which would justify the reversal of the judgment of conviction. We did this in view of the fact that a member of this court is of the opinion that certain of the instructions which were given, which are set forth in the dissenting opinion, are fundamentally erroneous so as to require a reversal. The two instructions to which particular objection is made by said member of this court could have been given in better form. We do not approve of their wording. In a close case the giving of such instructions might be grounds for a reversal of the conviction.

The fact that counsel for defendant, who very energetically fought for the rights of his client throughout the trial, did not object to either of these instructions is evidence to us that he did not consider them unfavorable to his client. Regardless of any admissions made by defendant at the trial, it was still the function of the jury to determine as a fact that the defendant had suffered the prior convictions as alleged in the information and they should have been so instructed. But in view of the record, wherein the defendant admits in his own testimony the two prior convictions, and further admits his guilt of the crime charged against him, such instructions must be considered as harmless error.

22 O. S. 1941 § 1068 is clearly applicable to the record as here presented. Said statute provides:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the

error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The jury only gave the defendant the minimum sentence. Surely this court would be making mountains out of molehills and subordinating substance to shadows if we would reverse this case because of a technically defective instruction, not objected to at the time of trial, nor raised by counsel on appeal, and which did not prejudice the defendant.

The issues mentioned in the dissenting opinion as to the failure of the court to provide the accused with counsel and of failure to postpone the sentence of defendant for two days after the verdict are so contrary to the record and without merit as to not warrant prolonging this opinion by a lengthy discussion of the same.

With reference to the appointment of counsel the record discloses:

"September 16, 1940.

"No. 3438—State of Oklahoma vs. Melbert Hudson

"Called on arraignment, and the County Attorney is present for the state. Defendant is present in person without counsel. Defendant is fully advised of his constitutional rights and he states that he does desire to have counsel appointed. Information is read and copy of same is served on him in open court. He waives further time to plead and now pleads not guilty. Bond is fixed in the sum of $2500.00. L. O. Fink is appointed to represent defendant."

We shall not assume that merely because the appointment of counsel to represent defendant is set forth in the last line of the minutes showing the proceedings on arraignment of accused, it means that counsel was not appointed until after the plea of not guilty was entered. The

record discloses that counsel appointed for defendant appeared at all proceedings thereafter on behalf of accused. He contested the state every inch of the way. Considering the fact that his client had absolutely no defense, it is our view that he very ably protected the interests of his client when the defendant escaped with only the minimum punishment. We direct attention to the fact that counsel was appointed on September 16, 1940. The trial commenced on November 7, 1940. During the interim between the appointment of counsel and the beginning of the trial, no application was made to withdraw the plea of not guilty and enter a plea challenging the jurisdiction of the court or attacking the information.

We think a fair inference from the record is that counsel was appointed at the time the accused indicated his desire to have counsel to assist him, and that no attack was made on the information at the time of arraignment or later because the information disclosed no defects and it would not benefit the accused to interpose an objection to it. But even though counsel was appointed at the time of arraignment, after a plea of not guilty was entered, our conclusion under the record would be the same. If counsel had made a request to withdraw the plea of not guilty and present a preliminary pleading, which request had been denied, then a different situation would have been presented.

In connection with the pronouncement of judgment and sentence, the record discloses that the verdict was returned on November 7, 1940. On November 8, 1940, motion for new trial was filed. On November 18, 1940, motion for new trial was overruled and sentence was pronounced. The written journal entry of judgment and sentence was filed on November 27, 1940, and on the same date defendant was transported to the State Penitentiary.

The basis for the reasoning advanced in the dissent regarding the failure of the court to postpone the pronouncement of sentence for two days after the verdict was rendered is caused by the recitation in the journal entry of judgment and sentence that sentence was pronounced on November 7th. The order overruling the motion for new trial recites that the court heard the argument on November 18th and overruled the motion at that time and thereupon sentenced the defendant. We think the insertion of the date November 7th in the judgment and sentence which was filed on November 27th was clearly a clerical error. Notwithstanding that, however, the right to have the pronouncement of judgment postponed for two days after verdict is one that may be waived, and where the record is silent, it is presumed that a waiver of time was made. Jones v. Territory, 4 Okla. 45, 43 P. 1072; Kerkendall v. State, 5 Okla. Cr. 570, 115 P. 612; Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 2d 205.

The issues raised in the dissenting opinion were not briefed by counsel for defendant, nor mentioned by him in oral argument, and consequently the same were not discussed by the state in its brief. It is sufficient to state that this court will not lend its approval to uphold extremely technical propositions which tend to obstruct and defeat the administration of justice. No clearer example of the utter defeat of law enforcement could be found than to follow to its logical conclusion the reasoning in the dissenting opinion. We are of the opinion that the accused has had a fair and impartial trial and that there are no material errors in the record which would justify or require this court to reverse the judgment of conviction.

The judgment of the district court of Osage county is accordingly affirmed.

BAREFOOT, J., concurs. DOYLE, J., dissents.