## LOUIS SOLOMON v. STATE.

No. A-10310.   Sept. 20, 1944.
(151 P. 2d 944.)

94

W. A. Chase, W. C. Henneberry, and B. C. Franklin, all of Tulsa, for plaintiff in error.

. Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, J. Defendant Louis Solomon was charged in the district court of Tulsa county with the crime of receiving stolen property as a second offender, was tried, convicted, sentenced to serve a term of six years in the State Penitentiary, and has appealed.

The charging part of the information filed against the defendant is as follows:

". . . that Louis Solomon on the 14th day of May, A. D. 1941, in Tulsa County, State of Oklahoma, and within the jurisdiction of this court, did unlawfully wilfully, knowingly, and feloniously, upon a consideration, obtain and receive from one John Doe, whose true name is unknown to informant, certain personal property towit: one fra-

ternity pin of the value of $3 in good and lawful money of the United States of America, which said property had been previously stolen from one A. B. Butler, and which said defendant did then and there at the time known that said property had been stolen, and did obtain and receive the same as aforesaid, with the felonious intent then and there upon the part of said defendant to convert the same to his own use and benefit, and to deprive the owner thereof permanently,

"That said defendant heretofore, towit: on the 10th day of February, 1936, was convicted of knowingly receiving stolen property in the district court of Tulsa County, Oklahoma, and was sentenced to serve one year in the State Penitentiary at McAlester, Oklahoma by Judge Thurman S. Hurst, Judge of said Court, and being case No. 7490.

"That said defendant heretofore, to-wit: on the 27th day of January, 1936, was convicted in the U. S. District Court for the Northern District of Oklahoma, for use of mails to defraud, and sentenced to two years in Levenworth, by the Honorable F. E. Kennemer, and being case No. 8397."

It will be noted that two former convictions of a felony are alleged, one in the district court of Tulsa county, and one in the United States District Court for the Northern District of Oklahoma.

It is contended by the defendant that it was improper to allege in the information more than one prior conviction, and that by reason of this being done, defendant's character was put in issue, without him first having put it in issue.

We have examined the authorities, and do not find that this exact question has ever been passed upon by this court. Our statute, 21 O. S. 1941, § 51, provides:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary,

commits any crime after such conviction, is punishable therefor as follows: . . . "

Nothing in this statute refers to a "second," or "third" offense. It says: "Every person who, having been convicted of any offense . . . commits any crime after such conviction."

We have often had this statute before us for consideration. Hudson v. State, 78 Okla. Cr. 160, 145 P. 2d 774; Ex parte Wright, 78 Okla. Cr. 157, 145 P. 2d 772; Ex parte Burnett, 78 Okla. Cr. 147, 145 P. 2d 441; Rheuark v. State, 78 Okla. Cr. 121, 144 P. 2d 118; Daves v. State, 77 Okla. Cr. 343, 141 P. 2d 603; Long v. State, 77 Okla. Cr. 174, 140 P. 2d 600; Johnston v. State, 46 Okla. Cr. 431, 287 P. 1068.

In construing it, we have universally held that it does not define a new or independent crime, but provides that when one is found guilty of a specific crime, he may be more severely punished because of his previous conviction as alleged and found. Ex parte Bailey, 60 Okla. Cr. 278, 64 P. 2d 278; Ex parte Weaver, 60 Okla. Cr. 290, 64 P. 2d 925; Ex parte Shockley, 78 Okla. Cr. 101, 144 P. 2d 118; Long v. State, 77 Okla. Cr. 174, 140 P. 2d 602.

If the defendant had been previously convicted more than one time, we see no reason why it might not be alleged and proven. We can see how this proof would be detrimental to a defendant, but this statute was evidently enacted for the very purpose of making it harder for those who had theretofore been convicted of a felony, and served a term in the penitentiary.

In defendant's brief, it is stated:

"It is my judgment that regardless of the fact that the plaintiff's in error then counsel did not file a de-

murrer to said information or objection to the introduction of evidence, still said information on its face is prejudicial and bad."

The record reveals that no demurrer or motion to quash the information was filed, nor was any objection offered to the introduction of evidence. It has universally been held that unless objection has been made to the information by way of demurrer, motion to quash, or objection made to the introduction of evidence, that it will be considered that one has waived his right to question the same, except that objections to the jurisdiction of the court over the subject matter, or that facts stated do not constitute a public offense, may be taken at the trial under the plea of not guilty, and in arrest of judgment. 22 O. S. 1941 § 512; Jackson v. State, 31 Okla. Cr. 30, 237 P. 129; Jackson v. State, 71 Okla. Cr. 258, 110 P. 2d 929.

In an exhaustive note in 58 A. L. R. page 60 et seq., the question of prior convictions has been fully discussed. See, also, O'Neil v. State, 76 Okla. Cr. 107, 134 P. 2d 1033, and cases heretofore cited. We refrain from making further references, but those who desire may read these cases as they fully discuss the statutes and questions similar to the one here involved.

Where one admits a previous conviction or convictions, the question of whether it is then proper for the trial court to admit proof of the prior conviction before the jury is often raised. Some states have statutes providing that when this admission is made it is unnecessary for the state to make this proof. In this case, when the state attempted to prove the prior convictions of defendant, his counsel admitted them. The state was permitted to introduce the record of these convictions, and this is complained of as error on this appeal.

Under our practice of permitting the jury to assess the punishment, we do not see how this could be considered error. If the jury is permitted to assess additional punishment by reason of the prior convictions, certainly they would have the right to be informed that there had been prior convictions, and to our way of thinking, it would cause just as much prejudice for the court to inform the jury of the prior convictions in his instructions as it would to permit proof thereof. In the instant case, the court properly instructed the jury that this evidence was not to be considered in finding the defendant guilty or not guilty, but that in the event a verdict of guilty was found, and they found that there had been a previous conviction as alleged and proven, that they could then take this into consideration in assessing the punishment. The defendant in this case took the witness stand and admitted the previous convictions as alleged, and testified that he had served three previous terms in the penitentiary for the commission of felonies.

We do not find that the court erred in refusing to sustain the contention that it was error to allege and prove the prior convictions of defendant.

It is next contended by defendant that the court erred in refusing to sustain the demurrer to the evidence, and that the evidence was insufficient to sustain the conviction.

This contention is largely based upon the fact that the property stolen was not identified by the prosecuting witness. Defendant was charged with receiving a gold fraternity pin of the value of Three Dollars. A short time prior to the arrest of defendant, the home of A. B. Butler, who resided in Tulsa, had been entered and certain jewelry stolen therefrom. Mr. Butler and his wife were away from home for a few days, and this robbery occurred during their absence. They reported it to the local police

officers. Soon after receiving this report, one W. L. Oliver, a jeweler of Tulsa, in compliance with a city ordinance, reported that he had purchased from Louis Solomon (the defendant) a certain fraternity pin for 35 cents. The officers immediately took the pin to the home of Mr. Butler, and it was identified as his pin, and one that had been stolen from his home. On cross-examination it developed that there were no special marks on the pin by which it could be identified, but the prosecuting witness testified to the loss of the pin, that it was received by him while at Yale University; that it was the pin of the Berzilius fraternity, an exclusive fraternity at Yale University; that only a few of the pins were given each year; that the fraternity was not represented in other Universities; and that he had only known of about four of the pins ever being in the State of Oklahoma. Other evidence was offered by the state. Mr. Oliver, the watchmaker and jeweler, testified that defendant came to his place of business on or about May 14, 1941, which was shortly after the Butler home had been entered, for the ostensible purpose of having his watch adjusted. Before leaving he produced the fraternity pin, and sold it to the witness for 35 cents, as old gold. The same day the witness read an account of the burglary of the Butler home, and reported this transaction to the police.

Flossie Pennington, a maid at the home of Mr. Butler, and who occupied quarters in the rear of the home, testified that the defendant came to the back door of the Butler home a short time prior to the entry thereof, and inquired for the "chauffeur and yard man." She testified that the Butlers did not have a chauffeur or yard man.

The officers testified that the defendant, when arrested, stated that he knew nothing about the fraternity

pin. He denied having sold the same to the jeweler. However, he testified at the trial that he had the fraternity pin and sold it for 35 cents, as testified to by Mr. Oliver, but he denied the testimony of the officers and the maid. He gave the same story that is so often given by defendants under similar circumstances. He claimed he bought the pin from some unknown person, whom he did not know and could not name, and whom he had never seen since that time. He testified that he approached this party, who was unknown to him, and asked him if he had any old silver spoons, telling him that he was engaged in the sale of old gold and silver, and that this unknown party produced the fraternity pin and he bought it from him for the sum of 30 or 35 cents.

The officers who arrested defendant further testified that defendant told them if permitted to leave the jail he thought he would be able to locate the diamond broach of the value of $2,500 that was taken from the Butler home at the time of the burglary. The assistant county attorney permitted him to be released, but this property was not recovered.

Under the above, we think the evidence was sufficient to support the verdict of the jury. It is true that the fraternity pin was hard to identify, by reason of its peculiar make and there being no special marks thereon, except the letter "B" which stood for the name of the fraternity; but the circumstances proven were sufficient for the jury to find that the pin was the property of the prosecuting witness, and we would not be justified in setting this verdict aside for the want of sufficient evidence.

In the information filed in this case, it is alleged that defendant received this property from one "John Doe, whose true name is unknown to informant." But it

is also alleged that the property was the personal property of and had been stolen from one A. B. Butler.

It is contended by defendant that it is necessary to allege the name of the party from whom the stolen property is received, if known, and that this is a material allegation, and must be proven as alleged. The cases cited by defendant do not sustain this contention, as applied to the facts here. The name of the party from whom the property was received was unknown, and this fact is alleged in the information. The defendant, while on the witness stand, testified that he did not know the name of the party from whom he received the property. If he did not know his name, after seeing and dealing with him, how could it be expected that the state would know his name? Where the name of the party from whom the property was received is unknown, that fact may be alleged in the information and proven as any other fact.

In the trial of this case, the court permitted the state to read a telegram from J. Edgar Hoover of the F. B. I., which gave an outline of the different arrests and charges against the defendant. He also admitted certain letters received by the defendant from the Treasury Department, United States Mint Service, Denver, Colorado. Both the telegram and letters were incompetent. But the court seemed to think if he admitted one, he should admit all. In view of the testimony of the defendant himself, we do not think the defendant was prejudiced by the introduction of the telegram. The introduction of incompetent evidence is not always error for which a case will be reversed. Jones v. State, 77 Okla. Cr. 285, 141 P. 2d 109; McKee v. State, 75 Okla. Cr. 389, 132 P. 2d 173; Sands v. State, 61 Okla. Cr. 206, 67 P. 2d 62; Suggs v. State, 46 Okla. Cr. 340, 285 P. 985; Pruitt v. State, 43 Okla. Cr. 420, 279 P. 707; Mayse v. State, 38 Okla. Cr. 144,

259 P. 277; White v. State, 34 Okla. Cr. 424, 246 P. 1114, 1115.

The defendant must show that he was prejudiced by the introduction of the evidence. The defendant himself testified that he had been arrested, tried and convicted on three previous occasions.

It is next contended that the court erred in giving instruction No. 7, which it is unnecessary to quote, and that by reason of a former decision of this court (Rice v. State, 60 Okla. Cr. 398, 64 P. 2d 1240, 1243) this case should either be reversed or modified. We have carefully examined the instructions in the Rice Case and the instant case. It is the general rule that the instructions will be examined as a whole. It will be noted that in the Rice Case it was said:

"The jury was nowhere instructed as to the punishment provided by the statute for burglary in the second degree. We think the jury should have been so instructed."

The record in the instant case reveals that the court fully instructed the jury as to the crime of receiving stolen property in instructions Nos. 2 and 4, and told them if defendant was found guilty, he could be punished "by imprisonment in the penitentiary not exceeding five years, or in the county jail not exceeding six months, or by a fine not exceeding $250, or by both such fine and imprisonment."

In instructions Nos. 3 and 5 the jury was instructed with reference to the introduction of evidence of prior convictions, and that this evidence was not to be considered by the jury as to the guilt or innocence of the defendant of the crime of which he stood charged, but should only be considered with reference to "fixing his punishment in

this case, in the event you find and believe beyond all reasonable doubt, that he is guilty in this case."

It will thus be seen that an examination of the instructions as a whole reveals that they fairly presented the law and the issues in this case.

It is further contended that the remarks of the assistant county attorney, in his closing argument, is cause for reversal of this case. The argument complained of does not appear in the record. The only reference thereto is by affidavit of defendant attached to the motion for new trial. This does not comply with the law as to the manner of taking exception and saving the record. For this reason this error may not be considered.

Objection is also made to the opening statement of the assistant county attorney. This was with reference to the allegations in the information charging previous convictions of the defendant, and we have already discussed this proposition.

Considering all of the facts and circumstances of this case, we find that the sentence given by the court was not excessive.

Finding no error, the judgment and sentence of the district court of Tulsa county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.