## PAT ROBINSON v. STATE.

No. A-1305. Opinion Filed February 21, 1913.

1. **ROBBERY—Conjoint Robbery—Sufficiency of Evidence.** In a prosecution for conjoint robbery, the evidence is held sufficient to support the verdict and judgment, and that no reversible error was committed on the trial.

2. **INDICTMENT AND INFORMATION—Sufficiency—Language of Statute.** Where the statute states the elements of a crime, it is generally sufficient, either in an indictment or information, to charge such crime in the language of the statute.

3. **CONTINUANCE—Grounds—Discretion of Court.** The refusal of a continuance in a criminal case, applied for on grounds not enumerated in the statute, is a matter within the discretion of the trial court, and nothing but a plain abuse of this discretion will warrant the appellate court in interfering with the judgment.

4. **ROBBERY—Conjoint Robbery—Evidence.** In a prosecution for conjoint robbery, a witness for the state was permitted to testify that immediately after the alleged robbery, the victim complained to him that he had been robbed by the defendant, without testifying as to the particulars of his statement. Held, not error.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*R. C. Allen, Judge.*

Pat Robinson was convicted of conjoint robbery, and brings error. Affirmed.

The plaintiff in error, Pat Robinson, hereinafter referred to as the defendant, was by information, charged with the crime of conjoint robbery, committed upon Roland Wallace in Muskogee county on the 24th day of November, 1910. The information was filed in the district court of Muskogee county, on the 24th day of April, 1911. May 13th, the defendant filed a demurrer to the information, which was overruled. Whereupon the defendant filed an application for continuance, which was overruled and the case was called for trial, and on the same day the jury returned a verdict of guilty and assessed his punishment at five years in the state prison. Motion for new trial was duly filed and, on May 23rd, said motion was overruled, and judgment and sentence was rendered and entered in accordance with the verdict. To reverse the judgment, an appeal by case-made was perfected.

A brief statement of the testimony is as follows:

Roland Wallace testified that he first met the defendant at Robinson's Meat Market in Briartown, on the evening of November 23rd, and while there he had his money, three ten dollar bills and two five-dollar bills, in his hand, in the presence of the defendant; and the next day, about nine o'clock, while he was at work, picking cotton on Mr. Beshear's farm, about one mile from Briartown, Porter Starr, the defendant, and a stranger approached him in the field and demanded some whisky which they claimed he had taken. Upon his denying it, the defendant said: "You have got to come and go with us and straighten this up; we have got to have our whisky." Wallace went to Briartown with these parties. Arriving there, they were informed that Finis Kaysinger, the man that said that Wallace had taken the whisky, had gone into the country. The defendant said that they would follow him in Henry Starr's wagon. They all got into a wagon and drove about a mile and a half to a point near the Briartown cemetery. Here Wallace said he would go

no further, and got out of the wagon, also the defendant and the stranger, and they insisted that Wallace take a drink of whisky, and when Wallace turned the bottle up to take his drink, the defendant and the stranger, with open knives held against his side, demanded that he either pay them or dig up the whisky. Wallace told them he did not have the whisky, and they told him to throw down his pocketbook. They took the money and the defendant told Wallace "to get to hell out of there." That he could feel the points of the knives when he threw down the purse; that it contained forty dollars in greenbacks and some silver; that this money was taken by force. That he returned to Briartown and complained of the robbery.

E. V. Beshears testified that he lived about a mile southeast of Briartown; Roland Wallace was working for him; November 24th, about nine o'clock, Pat Robinson and two other fellows came there, and he heard the defendant say: "Come on; you have got the grip of whisky and must go and fix it up." That Wallace said something about not wanting to go, and then they all went off together.

H. M. Pickering testified he was a brother-in-law of Beshears, and was picking cotton for him that day. His testimony as to what occurred in the field is substantially the same as Mr. Beshears'.

Sam Robinson testified that he had a store at Briartown; saw Wallace have three ten-dollar bills in his hand; that the defendant and a stranger were present in his store at the time; that about three o'clock in the afternoon on the day on which the robbery occurred, Wallace returned and complained of having been robbed by the defendant; that they left his store about ten o'clock that morning.

Oscar Goodwin testified that he saw Roland Wallace in Briartown on the night of November 23rd; that he had a roll of money with a ten-dollar bill on the outside in the store there and the defendant was present at the time.

Finis Kaysinger, as a witness, denied that he ever told the defendant or his accomplice that Roland Wallace had taken their whisky.

The testimony in behalf of the defendant is substantially as follows:

Henry Starr testified that he met Wallace and the defendant in Briartown, and they were having a dispute about some whisky that Wallace claimed that one Ike Stanford had taken, and they started out in his wagon to see him. They met Stanford and took two pints of whisky away from him. On their way back they stopped by the roadside and sat down, and they all commenced to play cards. After playing a while Wallace said that he would not play them all; that he would play any one of them single-handed, and Ed Ward was chosen to play him. That after a while the game broke up in a row; that Wallace had lost his money; that the money was not taken from him by force or by the drawing of knives by the defendant and Ward.

The defendant, testifying on his own behalf, stated that he had lost some whisky and Wallace had been accused of taking it, and that they started with him to find Ike Stanford to settle the dispute—Wallace having laid it on him; that they stopped by the road-side and began to play cards; they were all drinking. Wallace said that he would not play them all, so Ed Ward was chosen to play him. The game broke up in a row, Wallace claiming that he was cheated and that Ward had taken his money. He denied robbing Wallace, or that he had a knife or gun at the time. On cross-examination he admitted that he was arrested in Quinton about ten days later, and that he escaped from the officer by jumping out of a car window while the train was running; also that he had been convicted of burglary and served a term of two years.

The record shows that Porter Starr, called as a witness on behalf of the defendant, having been first duly sworn and called as a witness, refused to testify.

*Wallace Wilkinson,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *Jos. L. Hull,* Spec. Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above). It is contended first, "that the court erred in overruling the defendant's demurrer." The learned counsel in his brief says:

"The objection to the information is, first, that it fails to state how, or by what means or force the plaintiff in error put the said Roland Wallace in fear or whether or not the said Roland Wallace was in fear at the time of the seizing of his money; and second, that the money was not described."

The objection is not well taken. The information charges that the defendant, acting conjointly with a person unknown, did feloniously, by use of force, and by putting in fear, without the consent and against the will, seize and take from the person and immediate possession of the said Roland Wallace forty-one dollars, good and lawful money of the United States. The information follows closely the language of the statute, and we have no doubt whatever of its sufficiency.

It is next contended that the court erred in overruling the application for continuance. The affidavit for continuance sets forth that the defendant is informed and believes that if John Maidwell was present he would testify that he let Roland Wallace have three one-dollar bills on or just before the day of the alleged robbery. That if Henry Davis was present he would testify that he passed along where the defendant, Ed Ward and Roland Wallace were playing cards on that day. That if West Shaw was present he would testify that he saw Ed Ward with three one-dollar bills, such as the defendant contends that said Ed Ward won from Roland Wallace, immediately after said game of cards was played. That these witnesses lived near Briartown, in Muskogee county.

As a further ground, the affidavit states that:

"The defendant contends that Ed Ward and this defendant and the prosecuting witness, Roland Wallace, were in a poker game on that day near Briartown and that Ed Ward won all of the money that Roland Wallace had, which was three one-dollar bills and fifty cents in silver, and that no robbery occurred at said time, and that said Roland Wallace was not robbed. Defendant further says that Ed Ward cannot be found in the State of Oklahoma, that Porter Starr is in jail charged with robbery, that the said Starr has indicated that he desires to go

on the witness stand and testify in behalf of this defendant, but that the sheriff or this county refuses to permit the attorney for the defendant to see and talk with the said Porter Starr; that on the 6th day of May, 1911, the sheriff of this county caused the defendant to be arrested upon a charge of murder committed in this county, on the 4th day of May, 1911, at Old Starr Village, at the home of Bob Davis, that the defendant is now being wrongfully held upon said charge, and has been refused a preliminary examination, that he is charged with murdering Jim Work at the above-named place, and that on the same day and at the time the said Jim Work was killed, the defendant was at Whitefield, about ten miles from where Work was killed. That there exists a great deal of prejudice in the county of Muskogee against this defendant on the account of his being charged with the killing of the said Jim Work, who was a deputy sheriff, and that said prejudice will be to the detriment of this defendant in his trial in this case, that if this case is continued until after he has a preliminary hearing in the charge of murder against him then he will be able to prove by many witnesses that he was not present and did not kill said officer Jim Work. And that on that account this cause ought to be continued."

The rule is well settled that the refusal to grant a continuance in a criminal case, particularly for reasons not enumerated in the statute, is largely a matter within the discretion of the trial court, and nothing but a plain abuse of this discretion will warrant the appellate court in interfering with the judgment. We think the application for a continuance was properly denied.

Several assignments are based on rulings of the court in the admission and exclusion of testimony. Error is claimed upon the admission of certain testimony given by the state's witness, Sam Robinson, to the effect that Roland Wallace had complained to him that he had been robbed by the defendant. The objection is based upon the ground that the alleged statement was made out of the presence of the defendant, and that it was not a part of the *res gestae.* The state's evidence was that the robbery occurred about three-quarters of a mile from town, and that Wallace immediately proceeded to town, and as soon as he arrived there, complained of the robbery. We think, upon this state of facts, the evidence was admissible.

"Statements made by the owner or possessor of goods after an alleged robbery or larceny of them may be affected by several

principles. (1) The failure of the person to make complaint would be conduct indicating a nonbelief in the genuine occurrence of the injury charged, and would seem to be clearly admissible against him. Accordingly, to repel in advance this inference it would be proper to show for the prosecution, as in a charge of rape, that the person was not silent, but did in fact complain with reasonable promptness. Upon this principle, however, as in the case of rape, only the fact of the complaint, and not the details of the statement, would be admissible. * * * (3) On the theory of the exception to the hearsay rule for spontaneous exclamations (or *res gestae* statements), it would seem that, after some evidence of the robbery or larceny had been offered, the details of complaints or outcries made shortly after the robbery should be receivable." (2 Wigmore on Evidence, sec. 1142.)

See 3 Wigmore on Evidence, sec. 1762; *People v. Wallin,* 22 N. W. 15; *People v. Murphy,* 56 Mich. 546, 23 N. W. 215; *State v. Horans,* 32 Minn. 394, 20 N. W. 905; *State v. Ripley,* 32 Wash. 182, 72 Pac. 1036; *Lumpkin v. State,* 87 Ga. 510, 13 S. E. 523.

It is next insisted that the court erred in sustaining the objection to a question asked the witness Beshears, who testified that Roland Wallace returned to his place along towards dark on the day the robbery was committed. Witness was then asked: "What was his condition as to being drunk or sober?" Objection was made and sustained. The proof shows that the robbery was committed between one and three o'clock, hence, evidence of the victim's intoxication "along towards dark" would clearly not be competent. Sam Robinson, to whom witness made complaint of the robbery, immediately upon his return to Briartown, was not asked anything as to Wallace's condition then. No offer was made to show what Beshears' answer would have been to the question objected to. When objections to a question are sustained, if it is intended to reserve the question as to the competency of the testimony sought to be introduced for review upon appeal, an offer of what the testimony of the witness would have been, had he been permitted to answer, must be made.

Several impeaching questions were asked and objections sustained. The rulings of the court were correct, for the reason that there was no foundation whatever laid for such impeaching testi-

mony. Wallace as a witness was never asked as to the statements referred to. This was a necessary prerequisite to the admission of such evidence. 2 Wigmore on Evidence, secs. 1019 and 1025 *et seq.*

Several other objections of this character are urged, but they are all without merit.

The eleventh assignment of error is that the court erred in refusing to give to the jury requested instruction number one, which instruction is to the effect that if the arrest and transporting of the defendant from Quinton to Muskogee was without authority of law, then the defendant had a right to escape, if he could, and that circumstance should not be taken against him. The record shows that he was arrested upon the direction, by telegram, of the sheriff of Muskogee county, who had a warrant for his arrest. However, a sufficient reason for its refusal is shown by the defendant's testimony, in respect to his escape, as follows:

"Q. Why did you get away from him? A. Because we had had lots of trouble, and I didn't want to go with him. Q. Resented being arrested by a man you didn't like? A. Yes, sir. Q. You didn't like the officer that had you arrested? A. No, sir; I did not like him. Q. And you disliked him so much that you jumped out of the window of a moving train to get away from him? A. Yes, sir."

The reason why evidence of flight or an escape, after the commission of a crime, is admitted in evidence is, as has often been said, based upon observations of human conduct summed up in the saying that the wicked flee when no man pursueth. In other words, the fact of the escape is evidence of a consciousness of guilt. Of course, the presumption may be rebutted by evidence explaining the defendant's reason for the escape. Then it is for the jury to decide whether it was due to a consciousness of guilt, or to the reasons given by him. 1 Wigmore on Evidence, sec. 276. In this case the defendant gave as his reason for the escape, his resentment at being arrested by an officer he did not like. Nowhere did he say he fled from the officer's custody because the arrest was illegal. Whether or not the arrest was in fact illegal is immaterial in this case. The question was, What

were the motives which influenced the defendant in making his escape? Was it consciousness of guilt, or resentment at being arrested by an officer he did not like? It is evident from the record in this case that the defendant's dislike of officers of the law was not confined to the one who first apprehended him in this case. The court very properly refused the instruction.

Error is also assigned upon the refusal to permit the defendant's counsel to interview Porter Starr, an imprisoned witness, except in the sheriff's presence. No authority is cited to support this assignment. In support of the ruling of the court is cited the case of *Rex v. Simmonds,* 7 C. & P. 176, 32 E. C. L. 559. We think the court's ruling was correct.

Finally, it is contended that there was a fatal variance between the allegations of the information and the evidence, in this, that the information alleges that the robbery was committed by the defendant and a person unknown, and the evidence is the other person was Ed Ward, citing *Moss v. State,* 4 Okla. Cr. 247, 111 Pac. 950. This contention is not supported by the record, which shows that the complaining witness referred to such party as "the stranger" throughout all his testimony.

In the Moss case it is said:

"If there was no evidence adduced by either side tending to show that the name was known at the time of the filing of the information, the presumption of the verity of the allegation becomes conclusive upon the court and the jury."

The other errors assigned have not been presented in the brief, and they do not seem to merit consideration.

Having fully considered the assignments discussed by counsel, our conclusion is that the defendant had a fair and impartial trial, and has nothing to complain of at the hands of the court or the jury.

The judgment is therefore affirmed, mandate to issue forthwith.

ARMSTRONG, P. J., and FURMAN, J., concur.