## Ex parte HARLEN BROYLES.

No. A-10820.   March 19, 1947.

(178 P. 2d 652.)

Hulsey & Hulsey and George L. Hill, all of McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Bill Biggers, of Wewoka, for respondent.

BAREFOOT, P. J. The petitioner herein, Harlen Broyles, was charged in the superior court of Seminole county with the crime of murdering Eric Nicholson, a deputy sheriff of Seminole county, in the city of Seminole, on January 10, 1945. He was tried, convicted, and sentenced to be executed. He appealed his case to this court, and the judgment and sentence was affirmed on October 3, 1946, and the date of his execution was set for December 31, 1946. A full and complete statement of the facts are set out in that case and will not be here repeated. Broyles v. State, 83 Okla. Cr. 83, 173 P. 2d 235.

After the case was decided by this court, and on December 14, 1946, the petitioner, Harlen Broyles, filed with the Pardon and Parole Board of the State an application for commutation of sentence and stay of execution, on the ground, among others, that one Leo Barnett of Coalgate, Okla., had voluntarily confessed that he, and not Harlen Broyles, had killed Eric Nicholson in Seminole, on January 10, 1945. Thereafter the Pardon and Parole Board requested the Governor to stay the execution for a period of 30 days, and on December 23, 1946, the Governor

made an order, staying the judgment of death until January 31, 1947.

Pending this time, a full and complete hearing was had before the State Pardon and Parole Board. The entire record in the case was reviewed, and witnesses on behalf of the petitioner and the state were heard. After the hearing was completed, and on January 20, 1946, the Pardon and Parole Board reported to the Governor as follows:

January 20, 1947.

"His Excellency
"Roy J. Turner
"Governor of the State of Oklahoma.

"In re: Harlen Broyles,
No. A-10,595.

"Dear Governor:

"We have carefully considered the application of Harlen Broyles for clemency, and after a thorough review of the evidence, and after hearing all additional evidence of all parties, we find no facts or circumstances justifying the recommendation of any clemency in this case.

"Respectfully, submitted,

(Signed)   Jim Hatcher, Chairman
"A. B. Rivers        A. B. Alcord
"Pardon & Parole     J. B. Hollis
"Officer             John Helm
                     "Logan Stephenson
                          "Pardon & Parole
                               Board."

After this recommendation to the Governor by the Pardon and Parole Board, and on January 20, 1947, Har--

len Broyles filed in this court a petition for writ of habeas corpus, seeking his release from the State Penitentiary.

By reason of the facts and circumstances, as will be hereinafter stated, and the fact that petitioner was to be executed, we set the petition for hearing on January 24, 1947, and ordered that counsel for petitioner, the county attorney of Seminole county who prosecuted the case, and the Attorney General of the state be present on said date, and that a full and complete hearing be had before this court. Our reason for this hearing was that on November 26, 1946, Leo Barnett called the warden of the State Penitentiary at McAlester, and informed him that an innocent man was about to be executed, and that he (Barnett) was the man who killed Eric Nicholson. Wide publicity was given this statement by the public press, and although the Pardon and Parole Board of the State had heard all of the evidence in connection with this statement, and the same had been transcribed and a record made thereof, we were of the opinion that this court should again review the case, to the end that this petitioner and those interested in his behalf might know and be informed that the life of a citizen of this state had not been taken until he had been given every right to which he was entitled under the laws and Constitution of this state, and the United States, and to the end that a permanent record of the evidence which had been by the petitioner denominated as "newly discovered" could be made in the criminal reports of this state.

An examination of the petition presented no question of law which in any way justified this court in granting the writ of habeas corpus.

The newly discovered evidence as presented to the Pardon and Parole Board and to this court was as follows:

On November 26, 1946, Leo Barnett, who was an ex-convict, entered the drugstore of Bob McGinnis, in Coalgate, and asked him to listen to a telephone call he was going to make. He then entered a telephone booth in the drugstore and called the Hon. R. B. Conner, warden of the State Penitentiary at McAlester, and told him:

"I killed this man at Seminole, and you are going to electrocute an innocent man."

Mr. McGinnis testified before the Board, and stated that he immediately asked Barnett if he realized what he had done, and Barnett answered: "Bob, I did not kill that man, but I know who did kill him." Mr. McGinnis testified that Barnett had been drinking at the time of the conversation.

The sheriff of Coal county, John Phillips, arrived at the drugstore immediately and took charge of Barnett, and he was taken to the county jail of Atoka county.

Mr. Roscoe Brown was called as a witness by counsel for petitioner. He stated that he was in the cleaning and pressing business at Coalgate; that he had a conversation with Leo Barnett after the telephone call above referred to, and after Barnett was released from the Atoka county jail and had returned to Coalgate. He testified:

"Q. He informed you he had called the warden? A. Yes, sir. Q. What did he tell you about it—how did it happen? A. He came in often, and he was standing there and my daughter was taking care of the front, and he said he made the call, and I asked him, I said, 'Whatever induced you to make such a call as that for,' and he said, 'I know that boy is not guilty; I know he is not guilty;' and I said, 'Well, who is guilty?' and he said, 'I am not going to tell that.' Well, my daughter overheard the conversation. He said, 'I am going to tell you—I am going to tell you,'

and started to tell me, and a gentleman walked in, and he said, 'I will see you later.' "

Mr. Brown had known Leo Barnett for many years, and testified that he did not think he was drinking at the time he had the conversation with him, but that he had a bad reputation in that community. He knew him as "a whisky man and a law violator." This conversation was just before Leo was killed.

Paul Hardis was called as a witness before the Pardon and Parole Board. He testified that he lived at Coalgate, and was engaged in the business of selling butane tanks; that he had a conversation with Leo Barnett about 9 o'clock in the morning, prior to his conversation with the warden of the Penitentiary. He testified as follows:

"A. * * * when he first approached me that morning, he said he hated to see a man die for what he did not do. Q. Tell the Board what he did tell you. A. He just told me about the case and said the boy was innocent. He said, 'I know he did not do it.' * * * Q. Was he drunk or sober? A. At first he was not drunk. Q. Later you think he was? A. Well, he would go off and see somebody else and try to get a little money and come back, and later on seems like he was getting drunk or something, by 2 p.m. he was beginning to get pretty drunk."

It may be stated here that Leo Barnett was killed upon the streets of Coalgate in December, 1946, by an officer of Coal county, and while he was resisting arrest.

On behalf of the state, Mr. Bill Biggers, former county attorney of Seminole county and who tried the original case against petitioner, made a detailed statement of his actions, and the actions of the other officers concerning the investigation made of the telephone call to the warden.

He stated that on the night before Thanksgiving he was told about the statement Barnett had made to the warden, and that he, in company with Oad Lewis, one of the witnesses who identified Harlen Broyles at the time of the original trial, and Bob Short, a peace officer of Seminole county, went to Atoka and talked with Leo Barnett "in the presence of McBride, Johnnie Phillips, sheriff of Coal county and another deputy and a couple of patrolmen." He stated that Barnett told them that he made the call to the warden, but that he did not make the statement he was said to have made, and what he did say was: "I think you are going to electrocute an innocent man." Mr. Biggers said: "He (Barnett) made a statement to us that during the time he was in Oklahoma City, when one of the hearings was had in the Criminal Court of Appeals on the Broyles case, that he was in a poker game with Chick Rogers and some other parties he did not know, and Chick Rogers is now in the Federal Penitentiary for bank robbery, and when he was talking with these individuals playing poker up there, and another said, 'there goes another man on circumstantial evidence.' He said he did not know who it was that made the statement."

Mr. Biggers stated that they took Leo Barnett back to Seminole and various officers talked to him concerning the telephone call he had made to the warden; and Barnett made and signed the following statement:

"Statement of Leo Barnett.

"Made in the office of the Chief of Police, Seminole, Oklahoma, in the presence of Charley Reynolds, H. C. Carmichael, O. L. Nickerson and Jake Sims.

"Leo Barnett, thirty-four years of age, born and raised at Coalgate, Oklahoma. On November 26, 1946 while very drunk I called Warden Dick Conner of McAlester Penitentiary and advised him that I knew Harlan

Broyles was innocent of murdering Eric Nicholson. The only reason for making this call that I can give is that some six months ago in Oklahoma City I met Chick Rogers who I had known all my life. He was accompanied by another man that I didn't know. We had a few drinks and the Nicholson case came up. The man who I was not acquainted with made the statement that he didn't believe Broyles killed Nicholson. I have never seen this man since nor discussed this case with anyone. Rogers at this time is in the Federal Penitentiary for robbing a bank at Morton, Texas. I have no reason to believe Broyles is either guilty or innocent.

"I can assign only one reason for making this call, I was very drunk. I have read the above statement and it is true and correct.

"Witnesses:                    (Signed)   Leo D. Barnett
"Charles Reynolds
"H. C. Carmichael
"O. L. Nickerson
"Jake Sims."

The next day the officers took Barnett to the offices of the Bureau of Investigation in Oklahoma City, where an investigator from the Pardon and Parole Board was present. He made practically the same statement there. The Seminole county officers left him in that office.

Mr. Biggers further stated that while investigating the murder of Eric Nicholson, and before the arrest of Harlen Broyles, Leo Barnett was arrested in Houston, Tex., in connection with a disturbance at the Cotton Club, in that city. Mr. Biggers, in company with others, including a number of peace officers, went to Houston for the purpose of investigating the said Leo Barnett, and his whereabouts at the time of the killing of Eric Nicholson at Seminole. Leo Barnett told them that he was in New Orleans at that time, but upon investigation they found

that he was living in a rooming house in Houston, Tex., from January 7, 1945, to January 19, 1945, when he was arrested at the Cotton Club, and that he had spent every night there during that time. They also found that he was working at Walgreen's Drug Store, in Houston. In the record there appears the following affidavits:

"State of Texas, Harris County, ss.
"R. W. Case, of lawful age, being first duly sworn, deposes and says:

"That I am advertising manager of Walgreen Stores, Houston, Texas, and that I do hereby certify that our records show that Leo Duard Barnett was in our employment from January 9, 1945 to January 19, 1945, in the position of counter man at 1023 Main Street, Houston, Texas.

/s/ R. W. Case.

"Subscribed and sworn to before me this 10 day of January, 1947.

/s/ Mrs. Olive Huston,<br>Notary Public

Seal
My commission
expires June, 1947." Harris County Texas.

"State of Texas, Harris County, ss.
"C. J. Heninger of lawful age, being first duly sworn, deposes and says:

"My residence is at 611½ San Jacinto and prior to August 7, 1945 I operated a rooming house located at 202½ Preston Ave., in the city of Houston, Texas, and that my records show that Leo Barnett moved to my rooming house on January 7, 1945, having just arrived from New Orleans, La., and that on or about the 9th day of January, 1945, he went to work for the Walgreen Drug Store and that he worked there until January 19, 1945, and on that date he and his brother Leon Barnett were arrested for being involved in an affray at the Cotton Club, in Houston, Texas, and a few days later Leo Barnett was picked up and was arrested and held for questioning for some

Oklahoma authorities, but I personally knew that Leo Barnett was in Houston, Texas, from January 7, 1945 until after the 24th day of January, 1945.

/s/  C. J. Heninger

"Subscribed and sworn to before me this 10th day of January, 1947.

/s/  Mrs. Olive Huston
Seal                    Notary Public Harris County, Texas.
My commission expires June, 1947."

Also introduced in evidence were receipts showing the withholding tax taken out of his pay from January 9 to January 19, 1945.

Mr. Ivan Kennedy, the Director of the Division of Investigation for the State, testified before the Board as follows:

"A. I believe it was Friday following Thanksgiving that I talked to him (Leo Barnett). He was brought up by Jake Sims and some officers who had talked to him. I did not talk to him that day but my assistant, Mr. Crabb was there, and Mr. Crabb talked to him, and because of his reputation and his having called the FBI and confessed to the Walters Bank robbery, we did not put him in jail, but just released him and told him to come back, which he did.

"Q. Tell the court about his confession? A. He said he was just drunk and did not know a thing about this case, and the call he had made was, as I remember, due to some conversation he had. He heard somebody say this was an innocent man and when he gets drunk he does not know what he is doing, and that's why he does these things. He is the same man who called the FBI and told them he robbed the Walters Bank, and at that time told them he had $20,000 in his hip pocket." (It may be said that Leo Barnett was in no way connected with the Walters Bank robbery.)"

Mrs. Broyles, the mother of Harlen Broyles, was present at the hearing before the Pardon and Parole Board, and was permitted to testify. She stated that her home was in McCamey, Tex., but she had been at McAlester almost three months prior to the hearing before the Board. She gave the history of her son's life. He was, indeed, the "black sheep" of the family. He did not like to attend school. He left home and spent the winter of 1935 in Arkansas with his aunt and cousin. He returned home, then "hoboed" his way up into Missouri. He was there convicted of the crime of robbery, and sentenced to eight years in prison. He made application for parole, which was refused, and he was sent to the prison farm. He escaped from this farm, and finally went to Shawnee, Okla., where he secured a room at 230 North Bell street, and registered under the name of George McDaniels. He was residing at this address at the time Eric Nicholson was killed in Seminole. He arrived at the home of his mother in McCamey, Tex., on or about January 17th, which was about seven days after the killing of Eric Nicholson, in Seminole county. He was arrested in Waco, Tex., on February 1, 1945, at which time he shot and attempted to kill an officer who was taking him to the police station, in a manner very similar to the killing of Eric Nicholson in Seminole.

Mrs. Broyles also testified that her son brought certain clothes with him when he return home and she put them in a trunk in the garage. They were found there by the officers after his arrest in Waco. Among the clothes was a mackinaw that was positively identified at the original trial as being the property of a Mr. Gilley, and which was stolen on the night of January 10, 1945, the date Eric Nicholson was killed. This mackinaw was stolen by Harlen Broyles while Mr. Bill Adams, whom he had kidnapped a few minutes after killing Eric Nicholson, was in the car

with him. The mackinaw was positively identified by Mr. Gilley, his wife and his son, by reason of one of the buttons which had been taken from the son's coat and sewed on this coat, and by certain torn places which had been repaired by Mrs. Gilley with a thread of a different color.

Mrs. Broyles testified that when her son came home from Shawnee on January 17, 1945, he brought with him two guns, one a .32 and one a .38. She also testified that he told her he had never been in Seminole.

Rev. W. H. Alexander, a minister of Oklahoma City, appeared before the Board and testified of visiting Harlen Broyles in the State Penitentiary at McAlester. He had no individual knowledge of the case, and his testimony was not material to the issue involved.

We have stated the evidence as revealed by the record, so that the same may become a permanent record in the reports of this court. At the time of the hearing before this court, an order was entered denying the writ of habeas corpus, with the statement that an opinion would follow. In compliance with the judgment and sentence of the superior court of Seminole county, petitioner was executed at the State Penitentiary at McAlester on January 31, 1947.

Harlen Broyles was given every right guaranteed him under the Constitution and laws of this state. He had a fair and impartial trial. His claim of newly discovered evidence was heard by the Pardon and Parole Board of this state, and his petition for writ of habeas corpus was carefully reviewed by this court; and, as stated by Judge Jones in the original appeal:

"The evidence of his guilt as presented by the state was so overwhelming that no reasonable person with any regard for his oath as a juror could have come to any con-

clusion other than that the defendant was guilty of murder, as charged in the information."

Ten witnesses identified him as the party who killed Eric Nicholson. One witness, Minnie Cruse, did not identify him. There was a conflict in the evidence as to her being in a position to see the assailant at the time Eric Nicholson was killed. The statement made by Leo Barnett was that of an irresponsible person who evidently was seeking notoriety, and he admitted that his statement was prompted by a conversation had in a poker game with a person whom he did not know, and who stated that he thought an innocent man was going to be executed on circumstantial evidence. There was no basis for this statement, and it was only a loose statement or remark, if made, by one who knew nothing of the facts in this case. There can be no question under the evidence here presented that Leo Barnett was in Houston, Tex., and working for the Walgreen Drug Store from January 9 to January 19, 1945. Eric Nicholson was killed on the streets of Seminole on January 10, 1945, and Leo Barnett was not in Seminole county at that time, and did not know anything about the killing of Eric Nicholson.

For the reasons above stated, the petition for writ of habeas corpus was denied.

BRETT, J., concurs.   JONES, J., not participating.